IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CARR, CHARLES E. | ) | |
| CARR, LISA M. | ) | CASE NO. 15-13521 |
|         Debtors | ) | |
| | ) | |
| | ) | |
| Mississippi Department of Environmental Quality | ) | Chapter 7 |
| on behalf of the Mississippi Commission on | ) | |
| Environmental Quality | ) | |
| | ) | |
| | ) | Adversary Proceeding No. |
|         Plaintiff | ) | |
| | ) | |
|         v. | ) | |
| | ) | |
| | ) | |
| CHARLES E. CARR | ) | |
| | ) | |
| | ) | |
|         Defendant | ) | |
| | ) | |

**COMPLAINT PURSUANT TO FRBP RULE 7001 (4)
TO OBJECT TO DISCHARGE OF DEBTOR
FILED BY MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY,
ON BEHALF OF
THE MISSISSIPPI COMMISSION ON ENVIRONMENTAL QUALITY**

1. The Commission on Environmental Quality ("Commission"), acting by and through the Mississippi Department of Environmental Quality ("MDEQ"), files this Complaint Pursuant to FRBP Rule 7001 (4) to Object to Discharge of Debtor, and states as follows:

2. Debtor Charles E. Carr ("Carr") is subject to the Solid Waste Disposal Law of 1974, codified at Miss. Code Ann. §§ 17-17-1 et seq., the Mississippi Air and Water Pollution Control Law, codified at §§ 49-17-1 et seq. (Rev. 2012), and the rules and regulations of the Commission. Carr owned and operated a bulk fuel plant located at 1001 West Bankhead Street

1

in New Albany, Mississippi ("Site") from 1987 until 2002, when it was leased to Dees Oil Company. On October 31, 1998, MDEQ responded to a fuel release from a broken line at the site that resulted in approximately 450 gallons of premium gasoline being released. In January 2001, MDEQ followed up on a complaint from a resident across the street from the site complaining of strong gasoline vapors. Cobb Environmental and Technical Services, Inc. (CETS) was retained by Carr to conduct an Environmental Assessment and to install exhaust fans to assist with the removal of vapors from the sewer (Exhibit "A"). On March 9, 2007, MDEQ responded to a biodiesel fuel release at the site. A 10,000 gallon above ground bio-diesel tank was leaking. At the direction of MDEQ, the tank contents were transferred to a tanker truck and the tank was taken out of service. Also, forty cubic yards of contaminated soil and rock was excavated and removed for disposal. In 2007 and 2008, Groundwater samples were collected and a Groundwater Monitoring Report was completed.

**Commission Order**

3. On February 5, 2009, Commission Order 5527-09 was issued to Carr Oil Bulk Petroleum Facility ("Carr Oil"). The Order required completion of groundwater assessment to define the extent of groundwater contamination both onsite and offsite; and to prepare a Groundwater Corrective Action Plan to remediate the site; and to then follow through with the Plan to remediate the site (remove the contaminants from the groundwater). On April 14, 2009, the Order was amended to include Charles E. Carr, individually, as a Respondent, since it had been discovered that Carr owned the site individually. A copy of Commission Order 5527-09 and the Amendment to Commission Order 5527-09, along with a copy of the Certified Mail Receipt signed by Charles E. Carr upon receipt of the Amendment to Commission Order No. 5527-09, are included as Exhibit "B".

4. On January 25, 2013, MDEQ sent a letter to Carr which notified Carr that the consultant (CETS) would not release the site test results until the consultant was compensated by Carr for their work; and the letter also demanded that Carr comply with the terms of the Commission Order. The letter is included as Exhibit "C". Carr later made the necessary arrangements to have the contamination on the property assessed by CETS. MDEQ sent letters to Carr on July 26, 2013, and August 19, 2013, related to approval of the Corrective Action Plan prepared by CETS. These letters are included as Exhibits "D" and "E" respectively. The latest Groundwater Assessment Report, conducted in August 2014 by CETS, included contamination Plume Diagrams showing the extent of the contamination on and around the Carr Bulk Oil Facility. The Plume Diagrams are included as Exhibit "F". It should be noted that these diagrams show the contamination to have reached nearby residential properties and a nearby hotel. On December 30, 2014, MDEQ sent a letter to Carr which required that the approved Corrective Action Plan be implemented immediately to remediate the contaminated groundwater at the site. This letter is included as Exhibit "G". Carr failed to implement the Corrective Action Plan as required.

5. Commission Order 5527-09, and the Amendment to Commission Order 5527-09 require that Carr remediate the contamination at the site. Carr has not complied with these injunctive requirements.

**Applicable State Law**

6. Miss. Code Ann. § 49-17-29(2) states that it is unlawful for any person to cause pollution of any waters of the state or cause to be placed any wastes in a location where they are likely to cause pollution of the waters of the state: "Waters of the State" is defined at Miss. Code Ann. § 49-17-5(1)(f) (Rev. 2012) (includes surface water and underground water in the

definition of state waters). In violation of Miss. Code Ann. § 49-17-29(2), Carr caused the waste to be placed in a location likely to cause pollution of the waters of the state in 1998, 2001, and 2007. Miss. Code Ann. § 49-2-13(j) authorizes MDEQ to issue Commission Orders which prohibit, control or abate discharges of contaminants and wastes into the air and waters of the state. After Commission Order No. 5527-09 was issued, Carr Oil failed to request a formal evidentiary hearing to challenge the Order within the 30 day period allowed by Miss. Code Ann. § 49-17-41, so the Order is final. Afterward, the Amendment to Commission Order 5527-09 was issued, and Carr individually also failed to request a formal evidentiary hearing to challenge the Amendment within the 30 day period allowed by Miss. Code Ann. § 49-17-41, so the Amendment is final as well and Carr is required to comply with these injunctive requirements.

### Debtor's duty to comply with Environmental Law and Regulation is Not Extinguished by Conveyance of Property

7. Pursuant to the Resource Conservation and Recovery Act ("RCRA") and other law, the purchaser/current owner may have joint and several liability, along with Carr, to remediate the site; but Carr has a continuing duty to comply with Order No. 5527-09, as amended, regardless of whether the site is conveyed to another person, in accordance with Miss. Code Ann. § 49-17-29(2). Therefore, Carr continues to be responsible for the assessment and remediation of the Site. In *In re National Gypsum Co.,* 139 B.R. 397 (N.D. Tex. 1992), the court held that the debtor's liability would be determined based on usual joint and several liability principles. In *Penn Central v. United States,* 862 F. Supp. 437 (Sp. Ct. R.R.R.A. 1994), a case analogous to bankruptcy cases in many respects, the U.S. District Court for the District of Columbia determined that the Railroad Reorganization Act does not shield the polluter from answering for pollution for which it is responsible on property that it has conveyed to others.

**Falsification of Statement of Financial Affairs filed in this case**

8. Debtor Charles E. Carr ("Carr") filed his Petition for Bankruptcy in this Court on October 2, 2015. At that time, Carr was the record owner of a facility which is located at 1001 West Bankhead Street, New Albany, MS 38652. Carr listed the property as property that he owned on Schedule A entitled "Real Property", which was filed with his Petition for Bankruptcy on October 2, 2015. On November 3, 2015, a "Land Sold for Taxes" deed for the site was filed with the Chancery Clerk of Union County, Mississippi; and ownership of the site appears to have been conveyed to a third party purchaser. When the site was discussed at the § 341(a) hearing in this case, Carr believed he held an ownership interest in the site (Carr's attorney indicated that Carr would need to quitclaim Carr's ownership interest in the site. See Attached Transcript Excerpt at Exhibit "H"). In Carr's "Statement of Financial Affairs", filed in this case on October 2, 2015, Section 17 is entitled <u>Environmental Information</u>. Section 17(a) states "List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law". Carr falsely answered "None" to this question in violation of 11 U.S.C. 727 (3) and (4). Section 17(c) states: "List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number." Carr also falsely answered "None" to this question in violation of 11 U.S.C. 727 (3) and (4). In doing so, Carr concealed the existence of Commission Order No. 5527-09 and the Amendment to Commission Order No. 5527-09, from this Court in an attempt to avoid or extinguish liability for remediating the contamination at the site.

9. *11 U.S.C. § 727* provides:

The court shall grant the debtor a discharge, unless --

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed --

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, **_falsified_**, or failed to keep or preserve any recorded information, including books, documents, records, and **_papers_**, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

**_(4) the debtor knowingly and fraudulently, in or in connection with the case --_**

**_(A) made a false oath or account;_**

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

*11 U.S.C. § 727(a)(2)*, *(3)*, *(4)* & *(5)*. (emphasis added)

10. In *Roudebush v. Sharp (In re Sharp)*, 244 B.R. 889, 2000 Bankr. LEXIS 157 (Bankr.

E.D. Mich. 2000), the Court stated the following:

The bankruptcy process was designed to help "honest but unfortunate debtors." *Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991)* (citation omitted). The bankruptcy code requires a debtor to cooperate in the *bankruptcy* process by imposing certain disclosure requirements. In describing the nature and extent of the disclosure obligations of debtors in chapter 7, the judicial pronouncements in the cases are quite firm. "A debtor's complete disclosure is essential to the proper administration of the *bankruptcy* estate." *Cohen v. McElroy (In re McElroy), 229 B.R. 483, 488 (Bankr. M.D. Fla. 1998)*. "The veracity of the bankrupt's statements is essential to the successful administration of the *Bankruptcy* Code." *Van Roy v. Watkins (In re Watkins), 84 B.R. 246, 250 (Bankr. S.D. Fla. 1988)* (citing *Chalik v. Moorfield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984)*. "The obligation of full disclosure is crucial to the integrity of the *bankruptcy* process." *In re Hyde, 222 B.R. 214, 219 (Bankr. S.D.N.Y. 1998)*, rev'd on other grounds, *235 B.R. 539 (S.D.N.Y. 1999)*. "Debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately." *In re*

*Famisaran*, 224 B.R. 886, 891 (Bankr. N.D. Ill. 1998) (citation omitted). "The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *Casey v. Kasal (In re Kasal)*, 217 B.R. 727, 734 (Bankr. E.D. Pa. 1998), aff'd, 223 B.R. 879 (E.D. Pa. 1998). "The burden is on the debtors to complete their schedules accurately." *Rion v. Spivey (In re Springer)*, 127 B.R. 702, 707 (Bankr. M.D. Fla. 1991). "The burden is on the debtors to use reasonable diligence in completing their schedules and lists." *Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier)*, 71 B.R. 212, 215 (B.A.P. 9th Cir. 1987). "Candor, accuracy and integrity are required of a debtor in *bankruptcy*." *Holder v. Bennett (In re Bennett)*, 126 B.R. 869, 875 (Bankr. N.D. Tex. 1991). "Schedules are to be complete, thorough and accurate in order that creditors may judge for themselves the nature of the debtor's estate." *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 563 (Bankr. S.D. Cal. 1996). "The *bankruptcy* laws impose a strict obligation on debtors to file complete and accurate schedules." *In re Dubberke*, 119 B.R. 677, 680 (Bankr. S.D. Iowa 1990) (citation omitted). "If there is any doubt or uncertainty whatsoever as to a possible interest in any property, the asset should be scheduled with an appropriate explanation[.]" *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948, 959 (Bankr. N.D. Ind. 1988).

The connection between the debtor's obligation to file complete and accurate schedules and the fair administration of the *bankruptcy* case is clear.

The dual purposes of a Chapter 7 *bankruptcy* case are to grant the honest debtor a discharge of his or her prepetition debts and to provide a mechanism for the fair and orderly distribution of the debtor's assets that are subject to administration by the Trustee. These purposes are fully realized when a debtor complies with the requirement that he or she submit accurate and complete information concerning identification of creditors and assets.

In Re Sharp, citing [North River Ins. Co. v. Baskowitz (In re Baskowitz), 194 B.R. 839, 843 (Bankr. E.D. Mo. 1996)](#).

**The Automatic Stay does Not Apply to Injunctive Environmental Requirements**

11. A debtor-in-possession must comply with all federal and state environmental laws regulating its operations and property. *See* 11 U.S.C. §§ 362(b)(4) (police and regulatory exception to automatic stay); and 28 U.S.C. § 959(b) (debtors-in-possession must manage and operate their property in accordance with applicable non-bankruptcy law). In enacting the regulatory exception, Congress wanted "[t]o combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers." *United States v. Nicolet, Inc.*, 857 F.2d 202,

7

207 (3d Cir. 1988). "Bankruptcy does not insulate a debtor from environmental regulatory statutes." *United States v. Hansen*, 262 F.3d 1217, 1238 (11th Cir. 2001); *see also In re Commerce Oil Co.*, 847 F.2d 291, 297 (6th Cir. 1998) ("[W]e decline to adopt [debtor's] premise that preservation of the debtor's estate is of greater priority in the statutory scheme set forth by Congress in Title 11 than is the enforcement of environmental protection laws explicitly intended to be excepted from the automatic stay."). The Debtor and its lenders should thus not be permitted to use bankruptcy as a safe haven from compliance with Debtor's environmental obligations. The public should not be exposed to such risks and the bankruptcy system should not be misused to seek such a result.

12. Section 362(b)(4) allows the enforcement of police or regulatory judgments "other than a money judgment." 11 U.S.C. § 362(b)(4). The courts have held that, notwithstanding that compliance will often cost money, if a traditional money judgment is not being sought, enforcement is not stayed. See, e.g., *In re Commonwealth Oil Ref. Co.,* 805 F.2d 1175 (5th Cir. 1986); *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267 (3d Cir. 1984). Bankruptcy thus cannot be used as a safe haven from law enforcement.

**Injunctive Requirements of Environmental Law Are Not Discharged in Bankruptcy**

13. In *In re Chateaugay Corp.,* 944 F.2d 997 (2d Cir. 1991), the Court stated "a cleanup order that accomplishes the dual objectives of removing accumulated wastes and stopping or ameliorating ongoing pollution emanating from such wastes is not a dischargeable claim." In *In re Torwico Electronics, Inc.,* 8 F.3d 146 (3d Cir. 1993), the court stated that New Jersey could enforce a cleanup order against debtor that no longer owned or operated contaminated real property; and that the injunctive obligation to remedy pollution is not a claim where there is an ongoing and continuing threat and cleanup is not a repackaged claim for damages; injunctive obligations against former

operator survive based on continuing ownership of hazardous waste.  In *United States v. Apex Oil Co.*, 579 F.3d 734 (7th Cir. 2009), *aff'g* 438 F. Supp. 2d 948 (S.D. Ill. 2006), *aff'd on reconsideration*, 2006 WL 2375014 (S.D. Ill. Aug. 15, 2006), *cert. denied*, 131 S. Ct. 67 (2010), the court stated that the EPA request for injunction under RCRA § 7003 to clean up the groundwater plume near former oil refinery was not a dischargeable claim in bankruptcy because the natural reading of the statute is that discharge of equitable remedies is limited to situations where the breach gives rise to a right to payment because the equitable remedy cannot be executed; and the court rejected the contention that the costs to debtor to comply are equivalent to right to payment; and noted that RCRA does not authorize any form of monetary relief in any event.  In *Thebes v. Pennsylvania*, 2012 WL 1802044 (M.D. Pa. May 17, 2012), aff'g, 2011 WL 5005310 (Bankr. M.D. Pa. Oct. 19, 2011), the court determined that a state cleanup order against an individual chapter 7 debtor was not dischargeable notwithstanding the fact that (a) the property in question was owned by a trustee, and (b) the state statute under which the order was issued permitted the state to ameliorate the pollution and seek reimbursement of its costs; and found that the government was seeking compliance with an order to ameliorate current and ongoing pollution and that defendant was not prevented from compliance with the order by the trustee; and that the debtor's affidavit stating that pollution at the site was not continuing was unsubstantiated, conclusory, and not based on expertise, and therefore insufficient to raise a genuine issue of material fact as to whether the contamination was continuing and ongoing.  In *Davenport v. Neely*, 7 F. Supp. 2d 1219 (M.D. Ala. 1998), the court decided that the liability to a private party for cleanup was not discharged in bankruptcy because the agreement to perform cleanup was not monetary relief.

**Obligation of Trustee or Debtor in Possession to Comply with Environmental Law**

14.    The courts have been fairly uniform in holding that to the extent that a debtor engages in business while in bankruptcy, it must comply with all federal and state environmental laws

regulating its operations. Thus, a company operating in chapter 11 could not ignore the requirements of RCRA with respect to hazardous wastes it generates and must maintain compliant financial assurance if it wishes to continue its operations. See *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846 (4th Cir. 2001); and *In re Commonwealth Oil Ref. Co.,* 805 F.2d 1175 (5th Cir. 1986). The courts have relied on, among other things, 28 U.S.C. § 959(b) which states that a trustee or debtor in possession must "manage and operate" the property in its possession in compliance with all valid state laws (interpreted to include federal laws as well).

15. Further, the U. S. Supreme Court stated that "… we conclude that Congress did not intend for § 554(a) to pre-empt all state and local laws. The Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety. *Midlantic Nat'l Bank v. N.J. Dep't of Env. Prot.*, 47 U.S. 494 at 506-507 (1986). The Supreme Court added: "we hold that a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Id*. at 507.

16. Pursuant to the above stated statutes and case law, it is clear that the liability of a debtor to comply with the injunctive requirements of environmental law is not a claim that can be discharged in bankruptcy.

**Conclusion**

17. MDEQ is not required to file an administrative expense claim with respect to Debtor's injunctive obligations to comply with work requirements arising under orders of courts, administrative orders, and other environmental regulatory requirements imposed by law that are not claims under 11 U.S.C. § 101(5). Carr must comply with such mandatory injunctive environmental regulatory requirements. MDEQ reserves the right to take future actions to

enforce any such obligations of Carr. Nothing in this Request constitutes a waiver of any rights of MDEQ or an election of remedies with respect to such rights and obligations.

18.    Carr has or may in the future have environmental liabilities and responsibilities for property that was formerly or is currently part of its bankruptcy estate and/or for the migration of hazardous substances from property of its bankruptcy estate. Pursuant to 28 U.S.C. § 959(b), Carr and/or those in possession of the estate property are required to manage and operate estate property in accordance with non-bankruptcy law, including all applicable environmental statutes and regulations.

**Prayer for Relief**

WHEREFORE, MDEQ respectfully requests of the Court to include in its final Order the following relief:

A. Include language in any Discharge of Debtor stating that the environmental injunctive requirements imposed upon Debtor Charles E. Carr by Commission Order 5227-09, as amended, are expressly not discharged, and that the injunctive requirement for debtor to assess and remediate the contamination which originated from the Site, previously owned by Debtor, located in New Albany, Mississippi, shall expressly not be discharged; and,

B. Any such other relief as may be deemed appropriate by the Court.

Respectfully submitted, this the 4th day of May, 2016

*/s/ Roy Furrh*
ROY FURRH
MSB No. 4321
General Counsel
Mississippi Department of Environmental Quality
P.O. Box 2261
Jackson, MS 39225-2261
Phone: (601) 961-5260
rfurrh@mdeq.ms.gov

## **CERTIFICATE OF SERVICE**

I certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically.

SO CERTIFIED, this the 4th day of May, 2016.

*/s/ Roy Furrh*
Roy Furrh